IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| | § | Criminal No. 3:09-CR-249-D(2) |
| VS. | § | |
| | § | |
| MICHAEL BLAINE FAULKNER, | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION
AND ORDER

Defendant Michael Blaine Faulkner ("Faulkner") has filed an April 8, 2010 motion for review and motion for release from pretrial detention order. Treating the motion as one filed under 18 U.S.C. § 3145(b)[1] for revocation or amendment of the magistrate judge's detention order, and following *de novo* review of a transcript of the detention hearing,[2] the court denies the motion.

---

[1]Faulkner cites 18 U.S.C. § 3145(a)(2), which applies when the defendant has been ordered released by the magistrate judge and he is requesting amendment of the conditions of release. No conditions of release have been set here because Faulkner has been ordered detained.

[2]"When the district court, pursuant to 18 U.S.C. § 3145(b), acts on a motion to revoke or amend a magistrate's pretrial detention order, the court acts *de novo* and makes an independent determination of the proper pretrial detention conditions for release." *United States v. Fortna*, 769 F.2d 243, 249 (5th Cir. 1985). Reviewing a transcript of the detention hearing is an appropriate procedure to comply with that obligation. *See*, *e.g.*, *United States v. Farguson*, 721 F. Supp. 128, 129 n.1 (N.D. Tex. 1989) (Fitzwater, J.) (addressing review of tape recording of hearing).

I

Faulkner is charged in six counts of a second superseding indictment, returned on March 24, 2010.[3] In count one, he is charged with conspiracy to commit wire and mail fraud, in violation of 18 U.S.C. § 1349. In count two, he is charged with fraud and related activity in connection with electronic mail, in violation of 18 U.S.C. § 1037(a)(2).[4] In count three, he is charged with obstruction of justice by threatening a witness or informant, in violation of 18 U.S.C. § 1512(b)(3). In count five, he is charged with obstruction of justice by hiding assets, in violation of 18 U.S.C. § 1512(b)(2)(B). In count six, he is charged with conspiracy to obstruct justice by destruction of evidence, in violation of 18 U.S.C. § 1512(k).[5] In count eight, he is charged with false registration of a domain name, in violation of 18 U.S.C. § 3559(g)(1). His trial is scheduled for October 2010.

Following his arrest, Faulkner appeared before a magistrate judge on January 27 and February 1, 2010 for a detention hearing. The government's witness——an FBI special agent who investigated this case——testified that Faulkner was arrested in January after

---

[3]There is also a forfeiture count against him.

[4]He is charged under the penalty provision of 18 U.S.C. § 1037(b)(2)(C). He is also charged as an aider and abetter under 18 U.S.C. § 2.

[5]The punishment for this alleged conspiracy offense is found in 18 U.S.C. § 1512(c)(1).

being removed from Mexico, where Faulkner had lived under an assumed name.  The magistrate judge ordered Faulkner detained, finding that he presented a flight risk and that no conditions of release could assure the safety of the community.  Faulkner contends that the government has failed to sustain its burden for detaining him on either basis.

II

A

"If, after a hearing . . ., the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required . . ., such judicial officer shall order the detention of the person before trial."  18 U.S.C. § 3142(e)(1).  The court applies a preponderance of the evidence standard in determining that no condition or combination of conditions will reasonably assure the defendant's presence at trial.  *See United States v. Fortna*, 769 F.2d 243, 250 (5th Cir. 1985).[6]

_____

[6]The court applies a clear and convincing evidence standard in determining that no condition or combination of conditions will reasonably assure the safety of the community.  *See* 18 U.S.C. § 3142(f)(2) ("The facts the judicial officer uses to support a finding pursuant to subsection (e) that no condition or combination of conditions will reasonably assure the safety of any other person and the community shall be supported by clear and convincing evidence.").  The court applies a preponderance of the evidence standard in deciding whether Faulkner is a flight risk.  The court can detain Faulkner on the basis that he is a flight risk, without considering whether he would be a risk to the community if released.  *See Fortna*, 769 F.2d at 249 ("[T]he lack of reasonable assurance of either the defendant's appearance or the safety of

B

According to the government's witness, in March 2009 the government executed search warrants for Faulkner's residence and two of his business addresses.  After agents executed the warrants, Faulkner told alleged coconspirators that he was not willing to go to jail.  He met with several coconspirators and created a plan by which several coconspirators would move to Mexico to continue the criminal enterprise, and would soon be joined by Faulkner.  Later in April, government agents learned that Faulkner had moved to Mexico, joining two of the alleged coconspirators.  He was later joined by his wife and three children.  Mexican authorities expelled Faulkner in January 2010, and he was escorted back to the United States by several FBI agents and Mexican immigration officials.

While in Mexico, Faulkner used a false Nevada driver license purportedly issued to "Antonio Vargas" to lease his residence.  His wife, codefendant Chastity Lynn Faulkner, possessed Nevada identification for "Eva Vargas," and his children were registered for school under false names.  While in Texas, he and his wife had leased an automobile.  The couple brought the vehicle to Mexico, ceased making payments on it, and put false Nevada license plates on the car.  The Faulkners also abandoned their two Dallas-area

---

others or the community is sufficient [to detain a defendant without bond]; both are not required.").

homes, ceased making mortgage payments, and allowed banks to foreclose on them.  The agent testified that, until their arrests, Faulkner and his coconspirators continued their criminal enterprise from Mexico.

Faulkner contends that the magistrate judge erred in considering his flight to Mexico in determining whether any conditions of release could reasonably assure his appearance at trial.  Essentially, Faulkner argues that his travel to Mexico did not constitute flight, but rather was for innocent reasons.[7]  He contends that his hiring an attorney in the United States also indicates that his travel to Mexico was innocent.  And he contends that if he had intended to avoid prosecution, he would have traveled to a country with no extradition treaty with the United States.

The court rejects these contentions.  The court finds, based on statements that Faulkner made to alleged coconspirators, that he clearly anticipated being charged with a crime and left the United States for the express purpose of avoiding prosecution.  His use of

---

[7]Citing *Illinois v. Wardlow*, 528 U.S. 119 (2000), Faulkner contends that mere "travel" cannot be grounds for detention.  The Court in *Wardlow* stated that a "refusal to cooperate, without more, does not furnish the minimal level of objective justification needed for a detention or seizure."  *Id.* at 125 (internal quotation marks omitted).  But *Wardlow* concerned an officer's reasonable suspicion to make a stop, not whether the defendant was a flight risk.  And in *Wardlow* the Court held that flight from (as opposed to a refusal to cooperate with) an investigating officer is grounds for allowing an officer to detain the subject.

false identification and license plates indicates that his travel to Mexico was not an innocent relocation but an attempt to evade prosecution.   He retained an attorney to seek the return of property seized by the government pursuant to the search warrants. And there is no evidence in the hearing record that, prior to his flight, Faulkner was aware that Mexico had an extradition treaty with the United States and that other specific countries did not.[8]

Faulkner's flight shows a willingness to leave behind family connections and assets he has in the area to avoid prosecution. And his ability to procure and use multiple false means of identification demonstrates that he is capable of fleeing to avoid prosecution.[9]   The court finds, based on a preponderance of the evidence, that no condition or combination of conditions will reasonably assure his presence at trial.

---

[8]Without such knowledge, his choice of Mexico does not support an inference that he was not avoiding prosecution by moving there. Moreover, knowledge that Mexico had an extradition treaty with the United States would not necessarily support an inference that he did not flee there.  It could simply mean that he was willing to accept the risk of being returned to the United States in exchange for the perceived benefits of residing in proximity to the United States and Texas or for the ability to continue engaging in criminal activities.  Or he may have had concerns about residing in a country whose relationship with the United States did not involve normal international relations, such as an extradition treaty.

[9]Faulkner argues that his lack of assets prevents him from continuing any criminal enterprise if released; he does not assert, however, that his lack of assets prevents him from fleeing prosecution.  Even if he did, the court finds that, in light of his ability to obtain false identification, his lack of assets is an easily surmountable hurdle to a second flight.

III

Accordingly, the court denies Faulkner's April 8, 2010 motion for review and motion for release from pretrial detention order. The court orders that Faulkner be held without bond pending the trial of this action as follows.  He is committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal.  He is to be afforded reasonable opportunity for private consultation with his counsel.  By order of this court, to be issued in the future, the person in charge of the corrections facility in which Faulkner is to be confined is to deliver him to a United States Marshal for the purpose of appearing in connection with any court proceeding.

*     *     *

Faulkner's April 8, 2010 motion for review and motion for release from pretrial detention order is denied.

**SO ORDERED.**

April 19, 2010.

_____
SIDNEY A. FITZWATER
CHIEF JUDGE